IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

HUGH F. CULVERHOUSE, individually
and on behalf of all others similarly situated,

        Plaintiff,

vs.

PAULSON & CO. INC. and
PAULSON ADVISERS LLC,

        Defendants.

_____,

## CLASS ACTION COMPLAINT

Plaintiff, Hugh F. Culverhouse ("Plaintiff" or "Culverhouse"), individually and on behalf of all others similarly situated, sues Defendants, Paulson & Co. Inc. ("Paulson & Co.") and Paulson Advisers LLC ("Paulson Advisers"), and alleges as follows:

## INTRODUCTION

1.    Plaintiff and members of the Class defined below are persons who held limited partner interests in the Paulson Advantage Plus, L.P. hedge fund ("Paulson Advantage Plus") and lost money in their individual capital accounts when Paulson Advantage Plus sold its holdings in Sino-Forest Corporation ("Sino-Forest") at a loss of approximately $460 million.

2.    Sino-Forest purportedly operates commercial forest plantations in the People's Republic of China.  Defendants caused Paulson Advantage Plus to invest in Sino-Forest in 2007 amidst rumors that Sino-Forest was an acquisition target whose stock might quickly earn a premium.  With only short-term plans for Sino-Forest's stock, Defendants failed to expend the resources to conduct the proper initial due diligence into Sino-Forest's operations.

3.     Despite the rumors, Sino-Forest never was acquired.  Yet Paulson Advantage Plus and its unleveraged sister fund, Paulson Advantage L.P. ("Paulson Advantage"), continued to invest in the company.   By 2011, the two funds collectively were Sino-Forest's largest shareholder, holding approximately $800 million in shares (or about 14% of the company).  While Defendants collected significant management and incentive fees from their limited partners' capital accounts during that span, Defendants failed to conduct any further adequate due diligence of Sino-Forest.

4.     On June 2, 2011, Sino-Forest came crashing down.  The investment firm Muddy Waters, LLC ("Muddy Waters"), after conducting its own due diligence analysis of Sino-Forest, issued an alarming report (the "Muddy Waters Report") that exposed how Sino-Forest overstated the value and scope of its Chinese timber holdings and engaged in other questionable conduct.

5.     Publicly, Defendants supported Sino-Forest's management.  But in the two weeks following the Muddy Waters Report, Defendants sold Paulson Advantage Plus' entire stake in Sino-Forest at a substantial loss estimated to be more than $460 million, causing proportionate losses to each limited partner in their individual capital accounts at Paulson Advantage Plus.

6.     In response to the serious issues raised in the Muddy Waters Report, Sino-Forest established an independent committee of the company (the "Independent Committee") to investigate.  In a series of reports issued during the course of an eight-month investigation, the Independent Committee failed to dispel most of the key issues raised by the Muddy Waters Report, including issues relating to the company's forestry assets and certain questionable related-party transactions.  They also were unable to opine that Sino-Forest's business operations were legal under Chinese law.  The Independent Committee reported that it was unable to get to

the bottom of these issues largely due to the opacity and complexity of Sino-Forest's Chinese operations and the Chinese forestry industry in general.

7.     In August 2011, the Ontario Securities Commission suspended trading of Sino-Forest, and urged the company's top executives to resign.

8.     Plaintiff and members of the Class incurred losses in their capital accounts relating to Sino-Forest because Defendants breached their fiduciary duties by conducting a grossly negligent due diligence analysis of Sino-Forest's business operations that did not analyze the substantial risks of holding a near-billion-dollar investment in a forestry company based in China.   China's business environment, particularly in its timber industry, features complex structures and operations that differ significantly from those in other industrialized countries. Defendants' reckless indifference to Plaintiff's and Class members' investments, and failure to conduct the required due diligence in this foreign environment, amounts to gross negligence and a breach of Defendants' fiduciary duties to the Plaintiff and members of the Class.

## PARTIES AND JURISDICTION

9.     Plaintiff Hugh F. Culverhouse is a citizen and resident of the State of Florida who resides in Miami, Florida.  Culverhouse held a limited partner interest in Paulson Advantage Plus at the time that Paulson Advantage Plus sold off all of its Sino-Forest holdings in June 2011.

10.     Defendant Paulson & Co. Inc. is a Delaware corporation based in New York City with its principal place of business at 590 Madison Avenue, 29th Floor, New York, New York 10022.  It serves as the administrative general partner of Defendant Paulson Advantage Plus.

11.     Defendant Paulson Advisers LLC is a Delaware limited liability company with its principal place of business at 590 Madison Avenue, 29th Floor, New York, New York 10022.

3

None of its members resides in Florida.  Paulson Advisers serves as the managing general partner of Defendant Paulson Advantage Plus.

12.     Together, Paulson & Co. and Paulson Advisers manage Paulson Advantage Plus and make all administrative and/or investment decisions relating to Paulson Advantage Plus.

13.     This Court has subject matter jurisdiction over the claims raised in this Class Action Complaint pursuant to 28 U.S.C. § 1332(a) because Plaintiff and Defendants are citizens of different states and the relief being sought by Plaintiff and each Class member involves a sum greater than $75,000, exclusive of costs, interest and attorney's fees.

14.     This Court has personal jurisdiction over Defendants in accordance with Sections 48.193(1)(f)(1) and/or 48.193(2), Fla. Stat.  During the time that Defendants were engaging in service activities within Florida, Defendants caused injury to persons in Florida through acts or omissions taken by Defendants outside of Florida.  Defendants also engaged in substantial and not isolated activity in Florida.  Defendants purposely directed their activities to residents of this forum, and injured residents of this forum, by selling shares in Paulson Advantage Plus directly to clients in this forum, as well as through other distribution channels or "platforms" such as brokerage firms in this forum, without conducting proper due diligence of Sino-Forest.

## GENERAL ALLEGATIONS

### The Limited Partnership Agreement

15.     Prior to June 2, 2011, Plaintiff executed the Limited Partnership Agreement of Paulson Advantage Plus, L.P. ("Limited Partnership Agreement") and became a limited partner. An unsigned copy of the Limited Partnership Agreement is attached as **Exhibit A**.

4

16.     The Limited Partnership Agreement provides that upon each partner's admission to the partnership, a capital account is established on the books of the partnership for that partner in the amount of the partner's initial capital contribution.

17.     The Limited Partnership Agreement is structured so that all losses are allocated to each partner's capital account.  No losses are ever incurred by Paulson Advantage Plus.

18.     Each limited partner pays Defendants certain management and incentive fees. Specifically, a management fee payable to Paulson & Co. is charged to each partner's capital account each month (the "Management Fee").  The Management Fee amounts to 2% of the assets in each capital account yearly.  In addition, a fee equal to 20% of the yearly aggregate net gain in each limited partner's capital account is reallocated each year from each limited partner's capital account to Paulson Advisers (the "Incentive Allocation").

### Defendants' Standards in Conducting Due Diligence for Limited Partners

19.     Defendants' own standards of due diligence for limited partners was to  include the following: (i) making trading decisions based upon "both internally generated research and research obtained from outside sources such as sell-side research analysts, company officials, other investors, lawyers and consultants, in order to consider relevant investment, legal and regulatory issues," and (ii) continually monitoring each investment "to factor in all current information relating to the issuers of specific securities, other companies involved in an investment situation, and the financial markets."  Confidential Private Offering Memorandum ("Offering Memo"), attached as **Exhibit B**, at 6.

20.     The objective of Paulson Advantage Plus is to opportunistically invest in event-driven special situations that are generally not held long term.  Before making such investments, Defendants were required to fully understand the risks surrounding those investments, by

analyzing industry fundamentals, gaining a clear understanding of the fundamental drivers of growth, profitability and performance, understanding how companies in the industry trade, and actively managing positions in such event-driven investments over time to maximize returns and limit losses as such investments are exited.

21.     Among the securities traded in Paulson Advantage Plus are foreign securities. Defendants' duty to conduct due diligence for their partners is heightened when considering and monitoring investments in foreign securities.

### The Partnership's Trading in Sino-Forest

22.     Defendants began researching Sino-Forest in January 2007.  At the time, Sino-Forest had been identified in the financial press as a potential takeover target.  Sino-Forest purportedly was the leading commercial forest plantation operator in the People's Republic of China.  Its shares were traded on the Toronto Stock Exchange.

23.     Seeing Sino-Forest as a short-term investment, Defendants speculated that the company would be acquired or that it could possibly be relisted from the Toronto Stock Exchange to a local exchange.

24.     Defendants began purchasing Sino-Forest stock through Paulson Advantage Plus in 2007.  Sino-Forest was never acquired or relisted.  Yet Defendants continued to purchase Sino-Forest until Paulson Advantage Plus, collectively with its sister fund, Paulson Advantage, became the company's largest investor.  In May 2011, their collective position in Sino-Forest was 31 million shares, or approximately 14% of those outstanding.

### Due Diligence Conducted on Sino-Forest by Third Parties

25.     Sino-Forest's business centered primarily on tree plantations.  Sino-Forest utilized two business models, the "purchased plantation" model and the "planted plantation" model.  The purchased plantation model utilized (i) certain company-controlled British Virgin Islands-based

subsidiaries ("BVIs") and (ii) supposedly independent "authorized intermediaries" in China. The planted plantation model utilized a structure of "wholly foreign owned enterprises" incorporated in China.

26.     In 2011, various third parties conducted due diligence analyses of Sino-Forest's business operations and raised serious questions and issues about those operations.

27.     On June 2, 2011, Muddy Waters, a securities research firm, published its 39-page research report charging, *inter alia*, that Sino-Forest had significantly exaggerated its timber holdings, that it did not hold actual title to the timber assets it claimed to own, and that its public disclosures and financial statements were incorrect.

28.     The report also questioned the legitimacy of the company's fundamental business models. Muddy Waters uncovered evidence showing that the third-party transactions involving BVIs and authorized intermediaries, through which Sino-Forest purported to accomplish its purchases and sales, actually involved related parties. Muddy Waters discovered that the authorized intermediaries supplied, processed and bought Sino-Forest's raw timber, and that Sino-Forest only assumed risks and obligations during a short period of time when the raw timber was waiting to be processed. This structure allowed Sino-Forest to avoid generating traceable tax records, and allowed Sino-Forest to invent sales figures.

29.     Shortly thereafter, Augment Partners, another investment research service, reviewed the Muddy Waters Report and agreed that Sino-Forest "did not deserve anywhere near its pre-Muddy Waters valuation." While Augment Partners did not agree with all of Muddy Waters' conclusions, it identified critical unresolved issues that raised business, tax, legal and accounting risks that might have been appreciated had investors like Defendants obtained a

proper understanding of Sino-Forest's "opaque" business model. Augment Partners concluded that Sino-Forest's future growth projections depended upon a "Ponzi-like" scheme.

### Sino-Forest's Independent Committee Findings

30.     On June 2, 2011, Sino-Forest formed an Independent Committee of the Board of Directors to investigate the issues contained in the Muddy Waters Report. Since then, the Independent Committee has published two interim reports and a final report (the "Independent Committee Reports") that have uncovered numerous irregularities and failed to explain many of the concerns raised by the Muddy Waters Report. Through the Independent Committee Reports, Sino-Forest confirmed that there are numerous and significant issues surrounding Sino-Forest's holdings and the legality of its operations in China. For example, the Independent Committee Reports confirmed that:

(a)     Sino-Forest's valuation of, and claimed interest in, its forestry holdings could not be verified. The report disclosed missing records, difficulties in obtaining data, a lack of cooperation from some company executives and an absence of any corporate internal auditing function;

(b)     Sino-Forest does not obtain registered title to plantations purchased by its BVIs, and Sino-Forest's rights to such plantations therefore may be open to challenge. The Independent Committee noted that confirmations provided by the Chinese forestry bureau are not officially recognized documents and do not reflect any legal interest in, or title to, land or timber. There is a significant distinction between plantation operators' ownership of standing timber and leasing of the underlying land on the one hand, and plantation operators' ownership of the land itself on the other hand. In China, land generally can only be owned by the government and farmer collectives;

(c)     to the extent purchase and sales transactions were made with related parties, Sino-Forest's accounting would be negatively impacted;

(d)     the Independent Committee could not verify movements of cash in connection with set-off arrangements made through Sino-Forest's authorized intermediaries, implying that transactions recorded on Sino-Forest's books may have had no financial substance;

(e)     Sino-Forest has close relationships with certain suppliers, and certain suppliers and authorized intermediaries (who sell its timber in the Chinese market) have cross-ownership and other relationships with each other.  The Independent Committee reported that it could not obtain information from those third parties (many of which were not cooperating with the investigation) to examine the nature of Sino-Forest's relationships with these authorized intermediaries.  If suppliers and purchasers were related to each other and to Sino-Forest, substantial doubt would exist as to the validity and/or genuineness of transactions recorded in Sino-Forest's records, and any revenue reflected on Sino-Forest's financial statements;

(f)     the BVI structure used by Sino-Forest for its core activity of purchasing and selling standing timber assets — "a central driver of asset value, revenue and income for" Sino Forest — could be challenged by Chinese authorities as contrary to Chinese law, which prohibits the undertaking of business activities within China by foreign companies who do not have an onshore presence; and

(g)     the company obtained its listing on the Toronto Stock Exchange through a reverse takeover of a dormant Canadian firm, a practice that has been heavily criticized as a way to circumvent regulatory scrutiny.

## **Sino-Forest's Shares Plummet and Trading Is Suspended**

31.     Within two days of the Muddy Waters Report's publication, the market value of Sino-Forest's shares fell approximately 70%.

32.     Although Defendants publicly supported Sino-Forest's management after the release of the Muddy Waters Report, they sold Paulson Advantage Plus' entire stake in Sino-Forest between June 6 and June 17, 2011.   The limited partners' capital accounts incurred substantial losses estimated to be approximately $460 million, or more than 2% of their total value.

33.     On August 26, 2011, Sino-Forest's shares were suspended on the Toronto Stock Exchange by Canada's main securities regulator, which began an investigation into the allegations of fraud.  Those shares remain suspended.

34.     In August 2011, four top Sino-Forest executives resigned, including the CEO and founder.

35.     In the aftermath of the Muddy Waters Report and the collapse and cessation of trading of the Sino-Forest stock, a number of class-action lawsuits have been filed against Sino-Forest by Canadian and American shareholders and bondholders seeking billions of dollars in damages.

36.     On November 15, 2011, in conjunction with the publication of the Second Interim Independent Committee Report, Sino-Forest announced that it was deferring the release of its third quarter ("Q3") results until certain issues could be resolved to the satisfaction of the Board of Directors.

37.     The company also stated that "[t]he circumstances that could cause the Company to be unable to release the Q3 Results also could impact the Company's historic financial statements." The company's third quarter 2011 results still have not been released.

38.     In addition to indefinitely deferring the release of its 2011 third quarter results, Sino-Forest did not pay a $9.775 million interest payment on a convertible bond due on December 15, 2011, putting the company in breach of debt covenants and raising the prospect of insolvency proceedings. Moody's, Standard & Poors, and Fitch have all withdrawn their ratings of Sino-Forest.

### Defendants Failed to Conduct Due Diligence Before Purchasing Sino-Forest and Then Failed to Properly Monitor It While Holding the Investment

39.     Defendants had a fiduciary duty of care to conduct appropriate due diligence on Sino-Forest before investing assets of the Plaintiff and members of the Class to acquire that stock. They also had a duty to continually monitor the investment in Sino-Forest throughout the duration of its ownership.

40.     As Sino-Forest proceeds toward potential insolvency, it is clear that Defendants failed to conduct the due diligence that would have allowed Defendants to identify Sino-Forest's problems so as to prevent Plaintiff and Class members from suffering the losses they incurred.

41.     Defendants failed to conduct on-the-ground research to gain a proper understanding of Sino-Forest's business model and to test the accuracy of its public disclosures. Defendants failed to apprise themselves of the material issues revealed in the Muddy Waters Report, which Muddy Waters prepared after just two months of research and with far less resources than Defendants have at their disposal. Defendants had ample financial resources to conduct appropriate due diligence on Sino-Forest.

42.     Defendants failed to fulfill their basic duties to implement a process for conducting the appropriate due diligence regarding a foreign security in China — especially one like Sino-Forest which possesses an opaque and convoluted business model — before investing in Sino-Forest.

43.     In a conference call with investors on July 21, 2011, Defendants, through their principal, John Paulson, conceded that the due diligence performed of Sino-Forest had been deficient.  Defendants told investors that after Paulson Advantage Plus' hefty losses on Sino-Forest, Defendants intended to beef up their Asian research team and hire a specialist in the area concerning future investments.  Defendants, through Paulson, acknowledged that Defendants did not know the region well, and admitted that the losses in Sino-Forest were of Defendants' own making.  "We'll have to strengthen our research capabilities there," Paulson said.  Defendants, through Paulson, also conceded that their research analysts had been hearing rumblings about problems at Sino-Forest for months, and that Defendants' trading desk had received requests to borrow the stock to short it.  Defendants were trimming the Sino-Forest position when the Muddy Waters Report hit.  "I should have been more receptive to this information," Paulson said.  **Exhibit C**, Reuters July 21, 2011 article "Exclusive: Paulson Says Bets Were Too Aggressive."

44.     Defendants also owed Plaintiff and Class members the fiduciary duty of loyalty. Defendants breached that duty of loyalty by putting their own interest in generating large Management Fees and Incentive Allocations ahead of properly investigating the safety of the asset.

45.     Plaintiff and Class members entrusted their funds to Defendants.  By failing to adequately scrutinize Sino-Forest's business prior to investing in it, and then failing to heed

warning signs that it might be in danger of a short sale and precipitous decline in price, Defendants failed to protect the investment of Plaintiff and the Class and caused losses in the individual capital accounts.

46.     Defendants had superior knowledge and skill, and Plaintiff and Class members reposed trust and confidence in Defendants to prudently manage their investment assets.

47.     As investment management professionals, Defendants knew or should have known how to carry out their fiduciary duties by monitoring the safety and performance of Plaintiff's and Class members' assets in a prudent and professional manner.

48.     Defendants had responsibilities to establish appropriate procedures to conduct due diligence for all investments in which they chose to invest Paulson Advantage Plus' assets. These procedures were to be applied in creating general oversight and transparency regarding how Paulson Advantage Plus' assets were being invested.  Defendants were also responsible for seeing that these procedures and guidelines, if any, were in fact being followed.

49.     Defendants failed to act on their duties in that they failed to discover, or simply disregarded significant red flags surrounding Sino-Forest, including the red flags discovered by Muddy Waters, Augment Partners and the company's own Independent Committee.

50.     Defendants never made any meaningful effort to confirm that the Sino-Forest business model was legal under Chinese law, that Sino-Forest's reported timber holdings were accurately reported, that Sino-Forest actually owned those holdings, that the purported third-party transactions were arms-length, or that the company's financial statements were accurate and based on confirmed underlying data.

51.     In addition, Defendants failed to divest Paulson Advantage Plus of its holdings in Sino-Forest despite the fact that prior to June 2, 2011, Defendants learned that Sino-Forest's

stock was heavily targeted by short sellers.  As a result, Plaintiff and Class members suffered substantial losses in their individual capital accounts when the stock was sold after losing about 70% of its value within two days after publication of the Muddy Waters Report.

52.    Plaintiff and each of the Class members held their limited partnership interests in Paulson Advantage Plus through June 1, 2011, the last day before the publication of the Muddy Waters Report and its revelations about Sino-Forest's massive fraud.

53.    The Defendants have agreed that limited partners "may bring lawsuits against the general partners and their principal for, among other things . . . claims for breach of fiduciary duty, and certain claims arising under state law." Subscription Agreement for Limited Partnership Interest in Paulson Advantage Plus, L.P., an unsigned copy of which is attached as **Exhibit D** at 5.

54.    Plaintiff has retained the undersigned counsel and is obligated to pay reasonable legal fees and costs.

55.    All conditions precedent to bringing this action have been satisfied, waived, excused, performed, or otherwise have occurred.

## CLASS ACTION ALLEGATIONS

### Class Definition

56.    Plaintiff brings this action as a class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of himself and all Persons who (i) had a capital account with Paulson Advantage Plus on June 2, 2011, (ii) subsequently withdrew from the partnership and (iii) received redemption proceeds prior to the date of certification of a class (the "Class").

57.    Excluded from the Class are the Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with Defendants.

## Numerosity

58.    Members of the Class are so numerous and geographically dispersed that joinder of all members is impracticable.

59.    While the exact number of Class members remains unknown at this time, upon information and belief, hundreds if not thousands of Paulson Advantage Plus' limited partners had a capital account with Paulson Advantage Plus on June 2, 2011 and subsequently withdrew from the partnership.

## Typicality

60.    Plaintiff's claims are typical of the claims of the Class members in that Plaintiff and all Class members each trusted Defendants with investment of their assets in Paulson Advantage Plus.  Plaintiff and other Class members sustained damages due to the same breaches of fiduciary duties.

61.    Moreover, all Class members entered into identical or substantially similar form limited partnership agreements pursuant to which Defendants were entrusted with the investment and maintenance of the Class members' funds.

## Adequacy

62.    Plaintiff will fairly and adequately protect the interests of the Class and is committed to the vigorous prosecution of this action.  Plaintiff has retained counsel that is competent and experienced in hedge-fund-related class action litigation.

**Commonality**

63.     There are questions of law and fact that are common to the claims of Plaintiff and the entire Class, which include but are not limited to the following:

(a)     whether Defendants breached fiduciary duties to Plaintiff and the Class and were grossly negligent in investing and maintaining Plaintiff's and Class members' funds in Sino-Forest;

(b)     whether Defendants have been unjustly enriched by the Management Fees and Incentive Allocations collected in connection with the investment and maintenance of Plaintiffs' and Class members' assets in Paulson Advantage Plus' investment in Sino-Forest;

(c)     whether the Class has sustained damages as a result of the conduct alleged herein and, if so, what is the proper measure of such damages.

**Predominance**

64.     The questions of law and fact common to the Class predominate over questions of law or fact, if any, affecting only individual members of the Class.  For example, the primary questions that will determine liability in this case are common ones, including but not limited to the following:

(a)     whether Defendants breached fiduciary duties to Plaintiff and the Class and were grossly negligent in investing Plaintiff's and Class members' funds in Sino-Forest;

(b)     whether Defendants have been unjustly enriched by the Management Fees and Incentive Allocations collected in connection with the investment and maintenance of Plaintiff's and Class members' assets in Paulson Advantage Plus while that fund held its investment in Sino-Forest; and

(c)      whether the Class has sustained damages as a result of the conduct alleged herein and, if so, what is the proper measure of such damages.

### Superiority

65.      A class action is superior to other available methods for the fair and efficient adjudication of the Class claims herein asserted because:

(a)      joinder of the hundreds if not thousands of Class members is impracticable;

(b)      individual claims by the Class are impractical because the cost of pursuing individual claims could exceed the value of what each Class member has at stake such that individual Class members have neither the interest in, nor the ability to, prosecute and control separate actions; and

(c)      the interests of justice will be best served by resolving the common disputes of potential Class members in this single, competent forum.

66.      There will be no difficulty in the management of this action as a class action.

### COUNT I
### (Breach of Fiduciary Duty)

67.      Plaintiff incorporates paragraphs 1 through 66 as if fully set forth herein.

68.      Plaintiff and members of the Class reposed trust and confidence in Defendants to prudently invest their assets.  Defendants owed Plaintiff and Class members fiduciary duties of utmost good faith, loyalty and due care based upon their relationship.

69.      As investment management professionals, Defendants owed Plaintiff and the Class, among other things, the following duties:

(a)      To take all reasonable steps to oversee that the investments of Plaintiff and Class members were made and maintained in a prudent and professional manner;

17

(b)     To take reasonable steps and observe the strictest of formalities in seeking to preserve for Plaintiff and Class members the value of their investments;

(c)     To perform all necessary due diligence of investments made with Plaintiff's and class members' funds, and to maintain oversight and transparency over those investments; and

(d)     To exercise generally the degree of prudence, caution, and good business practices that would be expected of reasonable investment professionals overseeing client funds.

70.     Defendants were grossly negligent and breached their fiduciary duties in at least the following ways:

(a)     speculating that Sino-Forest would be a short-term investment and, with reckless indifference to the preservation of Plaintiff's and Class members' money, failing to conduct any real due diligence of the company before Sino-Forest's stock was purchased in 2007;

(b)     after Sino-Forest's rumored acquisition never materialized, recklessly investing even more of Plaintiff's and Class members' money in Sino-Forest without properly monitoring or conducting ongoing due diligence of the company;

(c)     acting with reckless indifference by failing to apply the considerable resources at their disposal to conduct due diligence and identify the numerous red flags that others in the industry such as Muddy Waters identified, including but not limited to the following:

(i)     that the value of Sino-Forest's assets were overstated;

(ii)     that the scope of its holdings in China were overstated;

(iii)    that the company does business through a complex network of authorized intermediaries and suppliers who own and/or control the land on which Sino-Forest purportedly had contractual rights over the timber.  This network was so opaque that even the company's own Independent Committee could not determine whether the entities operated at arms-length;

(iv)    that the company's fundamental business model may be illegal under Chinese law;

(v)    that the company has no internal auditing function;

(vi)    that the company gained its listing on the Toronto Stock Exchange through a reverse takeover; and

(d)    putting their own interest in generating large Management Fees and Incentive Allocations ahead of properly investigating the safety of the asset.

71.    As a direct and proximate result of Defendants' grossly negligent breaches of fiduciary duty, Plaintiff and the Class have suffered damages and are entitled to recover their damages from Defendants.

72.    Moreover, Defendants are liable for, and Plaintiff and Class Members are entitled to, punitive damages in an amount to be determined at trial attributable to conduct by Defendants that was reckless, willful, wanton and without regard to the rights of Plaintiff and the Class.

<u>**COUNT II**</u>
**(Gross Negligence)**

73.    Plaintiff incorporates paragraphs 1 through 66 as if fully set forth herein.

74.    As fund managers responsible for investing Plaintiff's and Class members' money, Defendants owed a duty to manage and monitor the assets of Plaintiff and the Class with

reasonable care, and to purchase an investment only after sufficient, careful and diligent studying of such investment.

75.     Defendants acted in a grossly negligent manner by breaching those duties and failing to comply with their own rules and standards of conduct and supervision.  Defendants acted grossly negligent by, among other things:

(a)     speculating that Sino-Forest would be a short-term investment and, with reckless indifference to the preservation of Plaintiff's and Class members' money, failing to conduct any real due diligence of the company before Sino-Forest's stock was purchased in 2007;

(b)     after Sino-Forest's rumored acquisition never materialized, recklessly investing even more of Plaintiff's and Class members' money in Sino-Forest without properly monitoring or conducting ongoing due diligence of the company;

(c)     acting with reckless indifference by failing to apply the considerable resources at their disposal to conduct due diligence and identify the numerous red flags that others in the industry such as Muddy Waters identified, including but not limited to the following:

(i)     that the value of Sino-Forest's assets were overstated;

(ii)     that the scope of its holdings in China were overstated;

(iii)     that the company does business through a complex network of authorized intermediaries and suppliers who own and/or control the land on which Sino-Forest purportedly had contractual rights over the timber.  This network was so opaque that even the company's own Independent Committee could not determine whether the entities operated at arms-length;

(iv)   that the company's fundamental business model may be illegal under Chinese law;

(v)   that the company has no internal auditing function;

(vi)   that the company gained its listing on the Toronto Stock Exchange through a reverse takeover; and

(d)   putting their own interest in generating large Management Fees and Incentive Allocations ahead of properly investigating the safety of the asset.

76.   As a direct and proximate result of Defendants' gross negligence, Plaintiff and Class members have suffered damages and are entitled to recover their damages from Defendants.

## COUNT III
### (Unjust Enrichment)

77.   Plaintiff incorporates paragraphs 1 through 66 as if fully set forth herein.

78.   During the time that Paulson Advantage Plus was invested in Sino-Forest, Plaintiff and Class members' capital accounts were charged millions of dollars in Management Fees and Incentive Allocations fees for investing Plaintiff's assets in the fund, which fees Defendants knowingly and voluntarily accepted and retained the substantial benefit of.

79.   Plaintiff and Class members have conferred a benefit on Defendants in the form of these Management Fees and Incentive Allocations.

80.   The circumstances under which Defendants received these benefits – in exchange for Defendants' abject failure to perform its duties relating to the Sino-Forest investment in a reasonably diligent fashion – render Defendants' retention of the benefits inequitable.

81.     Defendants have therefore been unjustly enriched. Equity and good conscience require Defendants to disgorge to all such unjust enrichment in an amount to be determined at trial.

82.     Accordingly, Plaintiff and Class members seek full restitution of Defendants' enrichment, benefits and ill-gotten gains acquired as a result of the unlawful and wrongful conduct alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment:

A.     Determining that this action is a proper class action, and certifying Plaintiff as class representative under Fed. R. Civ. P. 23;

B.     Awarding compensatory damages against Defendants in favor of Plaintiff and the Class for damages sustained as a result of Defendants' wrongdoing, together with interest thereon;

C.     Awarding disgorgement of all fees paid to Defendants during the time that Paulson Advantage Plus held its investment in Sino-Forest stock;

D.     Awarding pre- and post-judgment interest;

E.     Awarding punitive damages as appropriate;

F.     Awarding equitable and/or injunctive relief as permitted by law;

G.     Awarding Plaintiff and the Class their recoverable costs and disbursements of this suit; and

H.     Awarding such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury as to all issues so triable as a matter of right.

Dated: February 21, 2012

Respectfully submitted,

**DUANE MORRIS LLP**
*Attorneys for Plaintiff*
200 South Biscayne Boulevard
Suite 3400
Miami, Florida 33131
Telephone (305) 960-2214
Facsimile  (305) 397-1874

By _____
HARVEY W. GURLAND, JR., P.A.
Florida Bar No. 284033
hwgurland@duanemorris.com
FELICE K. SCHONFELD
Florida Bar No. 266523
fkschonfeld@duanemorris.com

**LEVINE KELLOGG LEHMAN
SCHNEIDER & GROSSMAN LLP**
*Attorneys for Plaintiff*
201 So. Biscayne Boulevard
34th Floor
Miami, FL 33131
Telephone:    (305) 403-8788

By _____
     LAWRENCE A. KELLOGG, P.A.
     Florida Bar No. 328601
     lak@lkllaw.com
     JASON KELLOGG
     Florida Bar No. 0578401
     jk@lkllaw.com

23