IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 1:12-CV-20695-COOKE

HUGH F. CULVERHOUSE, individually
and on behalf of all others similarly situated,

      Plaintiffs,

vs.

PAULSON & CO. INC. and
PAULSON ADVISERS LLC,

      Defendants.

_____ /

**<u>DEFENDANTS PAULSON & CO. INC. AND PAULSON ADVISERS LLC'S
MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW</u>**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................................. ii

INTRODUCTION ..............................................................................................................................1

BACKGROUND .................................................................................................................................3

      I.     Culverhouse Invested in the Feeder Fund, *Not* the Investment Fund ......................3

      II.    The Sino-Forest Investment ..................................................................................4

      III.   Culverhouse's Claims ...........................................................................................4

ARGUMENT .......................................................................................................................................5

      I.     The Legal Standard for Dismissal Under Rules 12(b)(1) and 12(b)(6) .................5

      II.    Culverhouse Lacks Standing to Sue Paulson Advisers ..........................................6

            A.    Culverhouse Does Not Have Standing as a Feeder Fund Investor
                to Assert Claims Against the Managers of the Investment Fund ...............7

            B.    The Complaint Does Not Meet Culverhouse's Burden on Standing ..........9

      III.   The Feeder Fund Documents Confirm That Culverhouse Has No Standing
           and Sued the Wrong Parties in the Wrong Forum ................................................10

      IV.   Culverhouse's Complaint Fails to State a Plausible Claim Sufficient to
           Overcome the Business Judgment Rule and Paulson Advisers'
           Exculpatory Rights ...............................................................................................11

            A.    Culverhouse Cannot State a Claim Against Paulson Advisers Absent
                Plausible Allegations of Gross Negligence, Bad Faith, or
                Willful Misconduct. ................................................................................12

            B.    Culverhouse's Claims Fail to Meet His Burden of Pleading Gross
                Negligence, Bad Faith, or Willful Misconduct. ......................................13

CONCLUSION ..................................................................................................................................17

CERTIFICATE OF SERVICE .........................................................................................................19

## **TABLE OF AUTHORITIES**

### **Federal Cases**

*American Dental Ass'n v. Cigna Corp.*,
  605 F.3d 1283 (11th Cir. 2010) ................................................................. 6

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937 (2009) .......................................... 2, 6, 17

*Basic, Inc. v. Levinson*,
  485 U.S. 224 (1988) ......................................................................... 15

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................. 2, 6, 10

*Benhabib v. Hughes Electronics Corp.*,
  No. CV 04-0095 CAS (VBKx), 2007 WL 4144940 (C.D. Cal. Mar. 30, 2007) ..................... 15

*Bierer-Carter v. United States*,
  806 F. Supp.2d 1245 (S.D. Fla. 2011) ................................................ 5, 9

*Bischoff v. Osceola County, Fla.*,
  222 F.3d 874 (11th Cir. 2000) ..................................................... 3, 5, 6, 9

*Carmichael v. Kellogg, Brown & Root Services, Inc.*,
  572 F.3d 1271 (11th Cir. 2009) ........................................................ 5, 6

*Coleman & Co. Securities, Inc. v. Giaquinto Family Trust*,
  236 F. Supp.2d 288 (S.D.N.Y. 2002) ................................................... 15

*David v. American Suzuki Motor Corp.*,
  629 F. Supp.2d 1309 (S.D. Fla. 2009) ................................................. 17

*DiLeo v. Ernst & Young*,
  901 F.2d 624 (7th Cir. 1990) ...................................................... 14, 17

*Elend v. Basham*,
  471 F.3d 1199 (11th Cir. 2006) ........................................................ 10

*Equity Lifestyle Properties, Inc. v. Florida Mowing And Landscape Service, Inc.*,
  556 F.3d 1232 (11th Cir. 2009) ........................................................ 17

*FindWhat Investor Group v. FindWhat.com*,
  658 F.3d 1282 (11th Cir. 2011) .................................................... 15, 17

*Gartenberg v. Merrill Lynch Asset Management, Inc.*,
  694 F.2d 923 (2d Cir. 1982) ........................................................... 14

*Global Aerospace, Inc. v. Platinum Jet Management, LLC*,
  No. 09-60756-CIV, 2011 WL 2530943 (S.D. Fla. June 23, 2011) ..................... 3, 5, 9

*Goldweber v. Harmony Partners, Ltd.*,
  No. 09-61902-CIV, 2011 WL 900294 (S.D. Fla. Mar. 15, 2011) ......................... 9

*Goldweber v. Harmony Partners. Ltd.*,
  No. 09-61902-CIV, 2010 WL 3702508 (S.D. Fla. Sept. 16, 2010) ............................................ 8

*Granite State Outdoor Adver., Inc. v. City of Clearwater*,
  351 F.3d 1112 (11th Cir. 2003) ........................................................................................... 6

*Harris v. Evans*,
  20 F.3d 1118 (11th Cir. 1994) ............................................................................................. 6

*In re Merkin*,
  No. 08 Civ. 10922(DAB), ___ F. Supp.2d ____, 2011 WL 4435873 (S.D.N.Y. Sept. 23, 2011)
  .................................................................................................................................... 4

*In re Optimal U.S. Litigation*,
  No. 10 Civ. 4095(SAS), 2011 WL 1676067 (S.D.N.Y. May 2, 2011) ..................................... 9

*Johnson v. Ocwen Loan Servicing*,
  374 Fed. Appx. 868 (11th Cir. 2010) ................................................................................... 6

*Jones v. Harris Associates L.P.*,
  130 S. Ct. 1418 (2010) ..................................................................................................... 14

*Kamen v. Kemper Fin. Svcs., Inc.*,
  500 U.S. 90 (1991) ........................................................................................................... 7

*Kendall v. Thaxton Road LLC*,
  443 Fed. Appx. 388 (11th Cir. 2011) .................................................................................. 10

*KH Outdoor, LLC  v. City of Trussville*,
  458 F.3d 1261 (11th Cir. 2006) ........................................................................................... 6

*Lawrence v. Dunbar*,
  5919 F.2d 1525 (11th Cir. 1990) ......................................................................................... 5

*Lindo v. NCL (Bahamas), Ltd.*,
  652 F.3d 1257 (11th Cir. 2011) ......................................................................................... 11

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ..................................................................................................... 6, 10

*Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n*,
  226 F.3d 1226 (11th Cir. 2000) ......................................................................................... 10

*Mills v. Foremost Ins. Co.*,
  511 F.3d 1300 (11th Cir. 2008) ....................................................................................... 6, 9

*Morrison v. Amway Corp.*,
  323 F.3d 920 (11th Cir. 2003) ............................................................................................. 5

*Mukamal v. Bakes*,
  378 Fed. Appx. 890 (11th Cir. 2010) ................................................................................... 7

*Newman v. Family Management Corp.*,
  748 F. Supp.2d 299 (S.D.N.Y. 2010) ................................................................................... 8

*Prado-Steiman ex rel. Prado v. Bush*,
  221 F.3d 1266 (11th Cir. 2000) ........................................................................................... 6

*Puskala v. Koss Corp.*,
  799 F. Supp.2d 941 (E.D. Wis. 2011)..................................................................... 14, 17

*Royalty Network Inc. v. Dishant.com*, LLC,
  638 F. Supp.2d 410 (S.D.N.Y. 2009)........................................................................ 15

*Saltz v. First Frontier, LP*,
  782 F.Supp.2d 61 (S.D.N.Y. 2010) ............................................................................ 8

*Securities Investor Protection Corp. v. Bernard L. Madoff Inv. Securities LLC*,
  454 B.R. 285 (Bankr. S.D.N.Y. 2011) ........................................................................ 7

*SIPC v. Morgan, Kennedy & Co.*,
  533 F.2d 1314 (2d Cir. 1976)..................................................................................... 7

*Stalley v. Orlando Reg'l Healthcare Sys., Inc.*,
  524 F.3d 1229 (11th Cir. 2008) .................................................................................. 5

*Stephenson v. Citco Group Ltd.*,
  700 F. Supp.2d 599 (S.D.N.Y. 2010)........................................................................... 8

*Sun Commodities, Inc. v. C.H. Robinson Worldwide, Inc.*,
  No. 11-62738-CIV, 2012 WL 602616 (S.D. Fla. Feb. 23, 2012) ............................... 5

*Valley Forge Christian Coll. v. Americans United*,
  454 U.S. 464 (1982)..................................................................................................... 6

*West Palm Beach Police Pension Fund v. Collins Capital Low Volatility Performance Fund II, Ltd.*, No. 09-80846-CIV, 2010 WL 2949856 (S.D. Fla. July 26, 2010) ..................... 9

**State Cases**

*Bakerman v. Sidney Frank Importing Co.*,
  No. Civ. A. 1844-N, 2006 WL 3927242 (Del. Ch. Oct. 16, 2006)........................... 17

*Brickell Partners v. Wise*,
  794 A.2d 1 (Del. Ch. 2001)....................................................................................... 13

*Brinckerhoff v. Enbridge Energy Co., Inc.*,
  No. 5526-VCN, 2011 WL 4599654 (Del. Ch. Sept. 30, 2011) ................................. 7

*Chatlos Found., Inc. v. D'Arata*,
  882 So.2d 1021 (Fla. 5th DCA 2004) ......................................................................... 7

*Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co.*,
  70 N.Y.2d 382 (N.Y. 1987) ...................................................................................... 17

*Fort Pierce Corp. v. C.L. Ivey*,
  671 So.2d 206 (Fla. 4th DCA 1996) ....................................................................... 7, 8

*Gelfman v. Weeden Investors, L.P.*,
  859 A.2d 89 (Del. Ch. 2004)..................................................................................... 13

*Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*,
  817 A.2d 160 (Del. 2002) ......................................................................................... 13

iv

*In re Boston Celtics Ltd. P'ship S'holders Litig.*,
   No. C.A. 16511, 1999 WL 641902 (Del. Ch. Aug. 6 1999) .................................... 12

*In re Caremark Int'l Inc. Derivative Litigation*,
   698 A.2d 959 (Del. Ch. 1996) ................................................................................ 2

*In re Citigroup Inc. Shareholder Derivative Litigation*,
   964 A.2d 106 (Del. Ch. 2009) ........................................................................ 12, 13

*In re Lear Corp. Shareholder Litigation*,
   967 A.2d 640 (Del. Ch. 2008) .............................................................................. 12

*One Step Up, Ltd. v. Webster Business Credit Corp.*,
   87 A.D.3d 1, 925 N.Y.S.2d 61 (N.Y. App. Div. 1st Dept. 2011) ........................... 17

*Solash v. Telex Corp.*,
   1988 WL 3587 (Del. Ch. Jan. 19, 1988) ............................................................... 13

*Springside Land Co., LLC v. Board of Managers of Springside Condominium I*,
   56 A.D.3d 654, 869 N.Y.S.2d 101 (N.Y. App. Div. 2d Dept. 2008) ....................... 11

*Tomczak v. Morton Thiokol, Inc.*,
   Civ. A. No. 7861, 1990 WL 42607 (Del Ch. Apr. 5, 1990) ................................... 13

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
   845 A.2d 1031 (Del. 2004) ............................................................................... 7, 8

*Williams v. Bear Stearns & Co.*,
   725 So.2d 397 (Fla 5th DCA 1998) ...................................................................... 17

*Zoren v. Genesis Energy, L.P.*,
   836 A.2d 521 (Del. Ch. 2003) .............................................................................. 12

**State Statutes**

6 Del. C. § 17-1101(d) ............................................................................................... 13

6 Del. C. § 17-1101(f) ................................................................................................ 13

**Federal Rules**

Fed. R. Evid. 201 ....................................................................................................... 15

Defendants Paulson & Co. Inc. and Paulson Advisers LLC, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, move to dismiss the Complaint (the "Complaint") filed by Plaintiff Hugh F. Culverhouse ("Culverhouse"), purportedly on behalf of a class of all persons who invested in Paulson Advantage Plus, L.P. (the "Investment Fund"), and, in support thereof, submit the following Memorandum of Law.

## INTRODUCTION

The Investment Fund is a hedge fund that invests in event-driven opportunities. Defendants Paulson & Co. Inc. and Paulson Advisers LLC (referred to collectively hereafter as "Paulson Advisers") are the administrative and managing general partners, respectively, of the Investment Fund. Plaintiff Culverhouse is ***not*** an investor in the Investment Fund itself; rather he invested in an unrelated Citigroup feeder fund, HedgeForum Paulson Advantage Plus, LLC (the "Feeder Fund"). The Feeder Fund, in turn, is an investor (limited partner) in the Investment Fund. The gist of Culverhouse's claim is that an alleged lack of due diligence by Paulson Advisers caused the Investment Fund (in which Culverhouse is ***not*** an investor) to lose money on an investment in Sino-Forest Corporation ("Sino-Forest"), a Canadian corporation that operates commercial forest plantations in China, and whose shares are listed on the Toronto Stock Exchange. The Complaint asserts claims against Paulson Advisers for breach of fiduciary duty, gross negligence, and unjust enrichment. This improper attempt to recoup an investment through litigation should be dismissed for three reasons:

First, Because Culverhouse is not an investor in the Investment Fund, he has no standing to assert claims arising out of Paulson Advisers' management of the Investment Fund. Numerous cases addressing just this type of situation -- where an investor in a feeder fund seeks to bring a claim against the managers of a separate investment fund in which the feeder fund invested -- hold that an investor in a feeder fund has no standing to sue the managers of an investment fund in which the feeder fund invested, because there is no contractual or fiduciary privity between the feeder fund investor and the manager of the investment fund in which the feeder fund invested. Whatever rights or claims Culverhouse may have are limited to the Feeder Fund in which he invested, and the claims he asserts against Paulson Advisers simply are not his to bring. Apparently aware of this basic standing preclusion, Culverhouse seeks to evade the issue by alleging facts he knows to be untrue, asserting misleading allegations, and attaching to his

1

Complaint unsigned exhibits, all designed to give the false impression that he has a direct interest in the Investment Fund; he does not. Worse still, Culverhouse does not even mention that his actual investment was in the Feeder Fund. Unlike a motion brought under Rule 12(b)(6), in deciding a Rule 12(b)(1) motion to dismiss which challenges the factual basis for standing, this Court owes *no* presumptive weight to the facts pleaded in the Complaint. Rather, the Court may consider all relevant evidence and evaluate the merits of Culverhouse's asserted basis for standing. The evidence is clear that Culverhouse has *no* interest in the Investment Fund, and thus no standing. Were the Court to grant Culverhouse standing, it would be the only court in the country to permit standing to a feeder fund investor suing the fiduciaries of an entity in which the feeder funds invested.

Second, the governing documents for the Feeder Fund in which Culverhouse invested confirm his lack of standing, and reflect that he has sued the wrong parties in the wrong forum. Regardless of whether Culverhouse has a claim to assert against someone else, by signing the Feeder Fund Subscription Agreement, he waived all rights of recourse against the Investment Fund and, by extension, Paulson Advisers. His remedies are limited to the Feeder Fund itself, and he has contractually and irrevocably submitted to the jurisdiction of the New York courts and the application of the laws of Delaware for any such claims.

Third, independent of his lack of standing, Culverhouse's conclusory and threadbare allegations do not state a plausible claim under the pleading standard of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009). Both the business judgment rule and the exculpatory clause of the Investment Fund's Limited Partnership Agreement shield Paulson Advisers from liability for alleged errors in its business decisions. To overcome these protections, Culverhouse must allege facts demonstrating that Paulson Advisers committed gross negligence, acted in bad faith, or engaged in willful misconduct, as these standards apply under Delaware law. As the Delaware Chancery Court said in *In re Caremark Int'l Inc. Derivative Litigation*, 698 A.2d 959 (Del. Ch. 1996), such a claim "is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment[.]" *Id*. at 967. The Complaint does not allege any facts sufficient to meet this stringent burden.

## BACKGROUND

### I.   <u>Culverhouse Invested in the Feeder Fund, *Not* the Investment Fund</u>

The Investment Fund is a hedge fund whose strategy is to invest in event-driven opportunities. (Complaint ¶ 20).[1] Paulson & Co. Inc. and Paulson Advisers LLC are the administrative and managing general partners of the Investment Fund. (*Id*. ¶¶ 10-12).

It cannot be overemphasized that Culverhouse is not and never has been a limited partner of the Investment Fund. (Exh. 1: Affidavit Of Rufus Putnam Coes ("Coes Aff."), ¶ 6).[2] He has **never** signed a Subscription Agreement with the Investment Fund; **never** invested in the Investment Fund; **never** contributed cash or securities to the Investment Fund; has **no** capital account with the Investment Fund; has **no** transactions reflected on the books and records of the Investment Fund; has paid **no** Management Fees or Incentive Allocations to Paulson Advisers as a result of any investment by him in the Investment Fund; has **never** withdrawn from the Investment Fund; and has received **no** redemption proceeds from the fund. (*Id*. ¶¶ 1-10).

Culverhouse invested in the Feeder Fund, **not** the Investment Fund. (*Id*. ¶ 11). The Feeder Fund is a separate and independent fund sponsored by Citigroup Alternative Investments LLC ("CAI"). It is not managed by Paulson Advisers, and has no relationship with Paulson Advisers other than as an investor with a limited partnership interest in the Investment Fund. (*Id*. ¶¶ 11-12). The terms of the relationship between Culverhouse and the Feeder Fund are set forth in the Feeder Fund's Amended and Restated Limited Liability Company Agreement and Subscription Agreement, attached hereto as Exhibits 2 and 3. (*Id*. ¶¶ 13-14). Specific terms of the relationship between the Feeder Fund and the Investment Fund are set forth in a letter agreement between CAI, the Investment Fund, and Paulson Advisers dated October 20, 2006 (the "Letter Agreement"), attached hereto as Exhibit 4. (*Id*. ¶ 15). Mr. Culverhouse is well aware that he did not sign, nor is he one of the Limited Partners referred to in the Limited Partnership Agreement and Subscription Agreement of the Investment Fund, unsigned copies of which are attached to

---

[1] Except where otherwise indicated, the allegations in this section are taken from the Complaint, are included solely for purposes of this Motion to Dismiss, and are not admitted by Paulson Advisers for any other purpose.

[2] For the reasons set forth in Section I of the Argument, *infra*, this Court may properly consider the exhibits accompanying this motion to dismiss for a factual challenge to standing under Rule 12(b)(1) without converting it into a motion for summary judgment. *See Bischoff v. Osceola County, Fla.*, 222 F.3d 874, 878 n. 4 (11th Cir. 2000); *Global Aerospace, Inc. v. Platinum Jet Management, LLC*, No. 09-60756-CIV, 2011 WL 2530943, at *3 (S.D. Fla. June 23, 2011).

the Complaint as Exhibits A and D. The fact that he did not produce signed copies of these documents makes the point very clearly.

## II.  The Sino-Forest Investment

Culverhouse alleges that Paulson Advisers failed to expend the resources necessary to conduct proper initial or ongoing due diligence into Sino-Forest's operations. (Complaint ¶¶ 2, 23-24). According to the Complaint, Paulson Advisers caused the Investment Fund to invest in Sino-Forest in 2007, amidst rumors that Sino-Forest was an acquisition target. (*Id.* ¶¶ 1-2, 22-24). Though Sino-Forest was never acquired, the Investment Fund and a sister fund, Paulson Advantage L.P., continued to invest in the company. (*Id.* ¶¶ 3, 24). By 2011, the two funds collectively were Sino-Forest's largest shareholder, owning approximately 14% of the company's outstanding shares with a then market value of approximately $800 million. (*Id.*).

On June 2, 2011, a firm called Muddy Waters, LLC issued a research report (the "Muddy Waters Report") stating that Sino-Forest had overstated the value and scope of its Chinese timber holdings, that its public disclosures and financial statements were incorrect, and that it had engaged in other questionable conduct. (*Id.* ¶¶ 4, 26-28). Augment Partners, another investment research firm, reviewed the Muddy Waters Report and did not agree with all of its conclusions, but agreed that Sino-Forest had been overvalued and identified unresolved issues relating to the risks of Sino-Forest's "opaque" business model. (*Id.* ¶ 29).

An Independent Committee of Sino-Forest's Board of Directors established to investigate the issues raised in the Muddy Waters Report uncovered numerous irregularities, failed to dispel most of the key issues raised by the report, and could not resolve other issues raised by the report. (*Id.* ¶¶ 6, 30). A number of class action lawsuits have been filed against Sino-Forest by its shareholders and bondholders seeking billions of dollars in damages. (*Id.* ¶¶ 35-38).

Within two days of the publication of the Muddy Waters Report, the market value of Sino-Forest's shares fell 70%. (*Id.* ¶ 31). Paulson Advisers sold the Investment Fund's remaining stake in Sino-Forest between June 6 and June 17, 2011. (*Id.* ¶¶ 1, 5, 32).

## III.  Culverhouse's Claims

In a three-count complaint, Culverhouse alleges that Paulson Advisers breached the fiduciary duty of care by failing to conduct appropriate due diligence and monitoring that would have allowed it to identify Sino-Forest's problems and to prevent Culverhouse and the putative class members from suffering losses. (Complaint ¶¶ 19-20, 39-43, 46-50). Culverhouse also

alleges that Paulson Advisers failed to divest the Investment Fund of its holdings in Sino-Forest despite learning prior to June 2, 2011 that Sino Forest's stock was heavily targeted by short sellers. (*Id.* ¶¶ 43, 51). Lastly, Culverhouse alleges that Paulson Advisers breached the fiduciary duty of loyalty by putting its interest in generating large Management Fees and Incentive Allocations ahead of properly investigating the safety of the asset. (*Id.* ¶ 44). Culverhouse seeks to represent a class comprised of all persons who (i) had a capital account with the Investment Fund on June 2, 2011, (ii) subsequently withdrew from the partnership, and (iii) received redemption proceeds prior to the date of certification of a class. (*Id.* ¶ 56).

## ARGUMENT

### I.   The Legal Standard for Dismissal Under Rules 12(b)(1) and 12(b)(6)

Paulson Advisers moves to dismiss the Complaint under Rule 12(b)(1) based on Culverhouse's clear lack of standing (s*ee* Sections II & III). *See Sun Commodities, Inc. v. C.H. Robinson Worldwide, Inc.*, No. 11-62738-CIV, 2012 WL 602616, at *1 (S.D. Fla. Feb. 23, 2012) (citing *Stalley v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008)) (stating that lack of standing is a jurisdictional issue to be decided under Rule 12(b)(1)). A Rule 12(b)(1) standing challenge "can be either 'facial' or 'factual.'" *Global Aerospace, Inc. v. Platinum Jet Management, LLC*, No. 09-60756-CIV, 2011 WL 2530943, at *3 (S.D. Fla. June 23, 2011) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990)). *See also Carmichael v. Kellogg, Brown & Root Services, Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). When the challenge is factual, the Court may "consider extrinsic evidence such as testimony and affidavits." *Global Aerospace*, 2011 WL 2530943, at *3 (citing *Lawrence*, 919 F.2d at 1529). It is "free to weigh the facts," and is "not constrained to view [facts] in the light most favorable to" the plaintiff. *Carmichael*, 572 F.3d at 1279. *See also Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003). No "presumptive truthfulness attaches to plaintiff's allegations," and the "existence of disputed facts" does not foreclose dismissal. *Bierer-Carter v. United States*, 806 F. Supp.2d 1245, 1248 (S.D. Fla. 2011) (quoting *Lawrence*, 919 F.2d at 1529 (11th Cir. 1990)). The consideration of such extrinsic evidence does not convert a Rule 12(b)(1) motion to dismiss into a motion for summary judgment. *See Bischoff v. Osceola County, Fla.*, 222 F.3d 874, 878 n. 4 (11th Cir. 2000) (citation omitted). To the contrary, the Court "may proceed as it never could under [Rule] 12(b)(6) or [Rule] 56" by evaluating the evidence on the merits. *Global Aerospace*, 2011 WL 2530943, at *3 (quoting *Lawrence*, 919 F.2d at 1529).

Paulson Advisers also moves to dismiss the Complaint under Rule 12(b)(6) based on Culverhouse's failure to state a claim (*see* Section IV). To survive a Rule 12(b)(6) motion, the Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). This entails a "two-pronged" approach: (1) eliminate any allegations that are merely legal conclusions; and (2) where there are well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1950). The first prong removes "[t]hreadbare recitals … supported by mere conclusory statements," while the second "requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1949-50 (citing *Twombly*, 550 U.S. at 555-56).

## II.    Culverhouse Lacks Standing to Sue Paulson Advisers

Culverhouse has the burden of pleading and proving standing. *See Bischoff*, 222 F.3d at 878 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). He has not met and cannot meet his burden, because the claims he asserts are not his to bring. To establish standing,[3] "the plaintiff must assert [his] own rights and interests and may not rely on the rights and interests of others." *Johnson v. Ocwen Loan Servicing*, 374 Fed. Appx. 868, 873 (11th Cir. 2010) (citing *Valley Forge Christian Coll. v. Americans United,* 454 U.S. 464, 475 (1982)). A party "cannot raise the claims of third parties not before the court." *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1266 (11th Cir. 2006) (quoting *Granite State Outdoor Adver., Inc. v. City of Clearwater*, 351 F.3d 1112, 1116 (11th Cir. 2003)). Moreover, in representing a class, Culverhouse "must not only satisfy the individual standing prerequisites, but must also 'be part of the class and possess the same interest and suffer the same injury as the class members.'" *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir. 2008) (quoting *Prado–Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000)). Culverhouse is raising claims that are not

---

[3] Standing involves both constitutional and prudential requirements. *Harris v. Evans*, 20 F.3d 1118, 1121 (11th Cir. 1994). The present motion addresses defects in Culverhouse's prudential standing.

his own, and he is not a member of his proposed class.

### A.   Culverhouse Does Not Have Standing as a Feeder Fund Investor to Assert Claims Against the Managers of the Investment Fund.

Culverhouse has no interest in the Investment Fund. He invested in the Feeder Fund, which in turn invested in the Investment Fund, which in turn is managed by Paulson Advisers. (Exh. 1: Coes Aff., ¶¶ 4, 6, 7, 9, 11). With three layers of separation between Culverhouse and Paulson Advisers, there is no contractual or fiduciary privity between them to support standing. One who invests in a feeder fund has "no securities accounts" at the investment fund in which the feeder fund invests, lacks "privity and any financial relationship" with the investment fund, entrusts "no cash or securities" to the investment fund, and has "no transactions reflected on the books and records" of the investment fund. *See Securities Investor Protection Corp. v. Bernard L. Madoff Inv. Securities LLC*, 454 B.R. 285, 290-91, 295-302 (Bankr. S.D.N.Y. 2011) (holding that investors in feeder funds which in turn invested in the Madoff master fund were not "customers" of the Madoff fund, and therefore were not eligible to receive individual payments under the Securities Investor Protection Act liquidation of Madoff's estate). Absent these ordinary indicia of an investment relationship, a feeder fund investor "cannot establish the existence of a fiduciary relationship" with the investment fund. *Id.* at 299 (citing *SIPC v. Morgan, Kennedy & Co.*, 533 F.2d 1314, 1317 (2d Cir. 1976)).

Culverhouse's status as a feeder fund investor is fatal to his standing. Under Delaware law, which governs Culverhouse's claims,[4] who has standing to bring a claim turns on (1) who suffered the alleged harm, and (2) who would receive the benefit of any recovery or other remedy. *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004). *See also Brinckerhoff v. Enbridge Energy Co., Inc.*, No. 5526–VCN, 2011 WL 4599654, at *6 (Del. Ch. Sept. 30, 2011) (applying the *Tooley* standard to limited partnership cases); *Fort Pierce*

---

[4] The Complaint does not state whether Delaware or Florida law governs Culverhouse's claims, but the Investment Fund is a Delaware limited partnership. (*See* Complaint, Exh. A). Under the internal affairs doctrine, this Court must apply the law of a company's state of formation to claims involving the internal affairs of the company. *See Kamen v. Kemper Fin. Svcs., Inc.*, 500 U.S. 90, 98-99 (1991); *Mukamal v. Bakes*, 378 Fed. Appx. 890, 896-97 (11th Cir. 2010) (citing *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982)). *See also Chatlos Found., Inc. v. D'Arata*, 882 So.2d 1021, 1023 (Fla. 5th DCA 2004) (citing Restatement (Second) of Conflict of Laws §§ 302 and 309)). Claims involving the management of a company or the fiduciary relationship between a company and its officers, directors, and owners, are internal affairs. *See Mukamal*, 378 Fed. Appx. at 896 (collecting cases). Delaware law therefore governs, but, as set forth herein, Florida follows a similar standard, so the result is the same under the law of either state.

*Corp. v. C.L. Ivey*, 671 So.2d 206, 206-07 (Fla. 4th DCA 1996) (holding that stockholders have standing under Florida law to "bring a suit in their own right" only "to redress an injury sustained directly by them individually and which is separate and distinct from that sustained by other stockholders"); *Goldweber v. Harmony Partners. Ltd.*, No. 09-61902-CIV, 2010 WL 3702508, at *3 (S.D. Fla. Sept. 16, 2010) (applying the same test to limited partnership standing). In this case, it is clear that the Investment Fund, not the Feeder Fund and certainly not Culverhouse, is the only party with standing to assert Culverhouse's putative claims. The Complaint alleges that Paulson Advisers caused the Investment Fund to invest in Sino-Forest, caused the Investment Fund to continue investing in Sino-Forest, and subsequently caused the Investment Fund to sell its stock in Sino-Forest following the issuance of the Muddy Waters Report for a loss of approximately $460 million. (Complaint ¶¶ 1-3, 5, 22-24, 32). The Complaint also alleges that Paulson Advisers collected significant management and incentive fees for the management of the Investment Fund during the time of the Sino-Forest investment. (*Id*. ¶¶ 3, 18). The Investment Fund suffered the alleged harm and would receive the benefit of any recovery, and the Investment Fund owns the claims. *See Tooley*, 845 A.2d at 1033. Consequently, Culverhouse's asserted claims against Paulson Advisers for breach of fiduciary duty, gross negligence, and unjust enrichment in managing the Investment Fund are not his claims, or even the Feeder Fund's claims. If they belong to anyone, it is to the Investment Fund.

Consistent with this analysis, *every* case to consider the issue has held that similar efforts by other feeder fund investors to sue the managers and fiduciaries of an investment fund, or even of their own feeder fund, for breach of fiduciary duty, gross negligence, and unjust enrichment must be dismissed for lack of standing. These cases hold that claims against a fund's managers belong to the fund itself, not to feeder fund investors. *See Saltz v. First Frontier, LP*, 782 F.Supp.2d 61, 77-80 (S.D.N.Y. 2010) (applying Delaware law to dismiss for lack of standing sub-feeder fund investors' claims for, *inter alia*, breach of fiduciary duty, gross negligence, and unjust enrichment against an upstream fund and its investment advisor); *Newman v. Family Management Corp.*, 748 F. Supp.2d 299, 314-16 (S.D.N.Y. 2010) (same); *Stephenson v. Citco Group Ltd.*, 700 F. Supp.2d 599, 608-12 (S.D.N.Y. 2010) (applying Delaware law to dismiss for lack of standing feeder fund investor's claims, including claim for breach of fiduciary duty,

against administrators and auditors of the feeder fund).[5] The same result holds in this case.

Culverhouse also cannot establish standing to represent his putative class, because he is not part of the class he seeks to represent. Culverhouse lacks the three defining characteristics his Complaint assigns to the putative class: he did not have a capital account with the Investment Fund on June 2, 2011, he did not subsequently withdraw, and he did not receive redemption proceeds from the Investment Fund. (Complaint ¶ 56; Exh. 1: Coes Aff., ¶¶ 7, 10). His dealings were with the Feeder Fund, and thus he has no standing to represent the interests of the limited partners in the Investment Fund. *See Mills*, 511 F.3d at 1307.

**B.     The Complaint Does Not Meet Culverhouse's Burden on Standing.**

Rather than confront the facts with regard to his actual investment in the Feeder Fund, the Complaint attempts to sidestep the standing issue by omitting any specific mention of his investment in the Feeder Fund and disingenuously alleging that Culverhouse "held" a direct partnership interest in the Investment Fund and executed the Limited Partnership Agreement of the Investment Fund prior to June 2, 2011. (*See* Complaint ¶¶ 1, 9, 15, 52). We need not deal now with how or why the Complaint contains such clearly false allegations, because regardless of the answer this Court owes no "presumptive truthfulness" under Rule 12(b)(1) to such allegations when evaluating them against the factual reality of Culverhouse's investment in the Feeder Fund. *Bierer-Carter*, 806 F. Supp.2d at 1248; *Global Aerospace*, 2011 WL 2530943, at *3.

Nevertheless, even viewed on their own terms, the allegations of the Complaint are deficient in their efforts to allege a plausible basis for standing. Standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'" *Bischoff*, 222

---

[5] Cases applying New York and Florida law have reached the same result. *See In re Optimal U.S. Litigation*, No. 10 Civ. 4095(SAS), 2011 WL 1676067, at *13-14 (S.D.N.Y. May 2, 2011) (dismissing for lack of standing claims for breach of fiduciary duty, gross negligence, and unjust enrichment in a putative class action brought by feeder fund investors against the feeder fund's investment advisor); *Goldweber v. Harmony Partners, Ltd.*, No. 09-61902-CIV, 2011 WL 900294, at *1 (S.D. Fla. Mar. 15, 2011) (dismissing for lack of standing claims for breach of fiduciary duty brought by a feeder fund investor against the feeder fund, its general partners, and the officers and directors of one of the general partners); *West Palm Beach Police Pension Fund v. Collins Capital Low Volatility Performance Fund II, Ltd.*, No. 09-80846-CIV, 2010 WL 2949856, at *1-3 (S.D. Fla. July 26, 2010) (dismissing for lack of standing claims for breach of fiduciary duty, gross negligence, and unjust enrichment brought by a plaintiff feeder fund investor in a putative class action against the feeder fund and related entities).

F.3d at 878 (quoting *Lujan*, 504 U.S. at 561). At the pleading stage, Culverhouse must satisfy *Twombly* and *Iqbal* by alleging a facially plausible basis for standing, that is, sufficient factual content to permit a reasonable inference that he has standing. *See Kendall v. Thaxton Road LLC*, 443 Fed. Appx. 388, 391 (11th Cir. 2011) (applying *Twombly* and *Iqbal* to standing). The Court "should not speculate concerning the existence of standing," nor should it "create jurisdiction" by "embellishing" the plaintiff's allegations. *Elend v. Basham*, 471 F.3d 1199, 1206 (11th Cir. 2006) (quoting *Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n*, 226 F.3d 1226, 1229 (11th Cir. 2000)).

The Complaint fails to allege sufficient facts to identify how Culverhouse "held" his purported interest in the Investment Fund. The Complaint acknowledges that investors like Culverhouse purportedly acquired interests in the Investment Fund both directly and through "other distribution channels" or "platforms," but does not state whether Culverhouse acquired his interest directly or through one of the "other distribution channels," *i.e.*, the Feeder Fund. (*See* Complaint ¶ 14). The Complaint attaches only unsigned copies of the Limited Partnership Agreement and Subscription Agreement for the Investment Fund. (*Id.* ¶¶ 15, 53, Exh. A, D). The omission of any explanation of how Culverhouse purportedly acquired his interest in the Investment Fund, combined with the exclusion of signed documents, leaves this Court with insufficient facts other than through speculation or embellishment to determine the nature of Culverhouse's relationship, if any, with Paulson Advisers. It also leaves the Court with insufficient information to determine whether Culverhouse is asserting his own rights or those of another. Indeed, if anything, the allegations of the Complaint make clear that the rights asserted belong to the Investment Fund which suffered the loss, if to anyone at all. (*Id.* ¶¶ 1-3, 5, 18, 22-24, 32).

### III.    The Feeder Fund Documents Confirm That Culverhouse Has No Standing and Sued the Wrong Parties in the Wrong Forum

When the governing documents of the Feeder Fund are taken into account, as is appropriate for a Rule 12(b)(1) factual challenge to standing, *see* Section I, *supra*, the deficiencies in Culverhouse's standing are even more glaring. Those documents reflect that Culverhouse has affirmatively waived recourse against Paulson Advisers. His rights, if any, are against the Feeder Fund and by contract must be pursued in the courts of New York.

Section V(A) of the Subscription Agreement for the Feeder Fund confirms by contract what the above cases already establish as a matter of law -- that Culverhouse has no direct

interest in the Investment Fund and thus no right of recourse against Paulson Advisers. It acknowledges that an investment in the Feeder Fund "does not constitute a direct investment" in the Investment Fund. (Exh. 3, § V(A)). It further states that an investor in the Feeder Fund "will not be an investor" in the Investment Fund, "will have no direct interest" in the Investment Fund, "will have no voting rights" in the Investment Fund, and "acknowledges and agrees that [he] will have **no recourse** to or against" the Investment Fund. (*Id.* (emphasis added)). The Feeder Fund investors, in short, have voluntarily relinquished any recourse against the Investment Fund, or, by extension, against Paulson Advisers as its managers. Culverhouse's lack of standing is therefore confirmed by the Subscription Agreement's waiver of standing. *See Springside Land Co., LLC v. Board of Managers of Springside Condominium I*, 56 A.D.3d 654, 658, 869 N.Y.S.2d 101, 105 (N.Y. App. Div. 2d Dept. 2008) (enforcing a voluntary waiver).[6]

Having relinquished any claims with respect to the Investment Fund, and having no standing at law to bring such claims in any event, whatever rights and interests Culverhouse may have with respect to his investment in the Feeder Fund are limited to the Feeder Fund and its managing member. The Complaint is not directed to the Feeder Fund, and is brought in the wrong forum to assert Culverhouse's rights as a Feeder Fund investor. Both the Amended and Restated LLC Agreement and the Subscription Agreement for the Feeder Fund provide that, for any dispute relating to the Feeder Fund, its members "consent and submit to the jurisdiction of the courts of the State of New York in the county of New York and of the U.S. District Court for the Southern District of New York," and "irrevocably submit[]" to the jurisdiction of the courts of New York. (Exh. 2, § 8.04; Exh. 3, § V(D)). Culverhouse's pursuit of standing against Paulson Advisers in a Florida court is therefore futile.

## IV.    Culverhouse's Complaint Fails to State a Plausible Claim Sufficient to Overcome the Business Judgment Rule and Paulson Advisers' Exculpatory Rights

Independent of his lack of standing, Culverhouse's Complaint consists of vague and inadequate allegations that do not and cannot satisfy the plausibility standard of *Twombly* and *Iqbal*, because they are wholly insufficient to overcome the protections of the business judgment rule and Paulson Advisers' exculpatory rights. The Complaint seeks to hold Paulson Advisers liable based on hindsight criticism and second-guessing of its business judgments at the time of

---

[6] The Feeder Fund Subscription Agreement is governed by New York law. (Exh. 3, § V(D)). The Eleventh Circuit enforces such choice-of-law clauses. *See Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1269 (11th Cir. 2011).

the Sino-Forest investment. Delaware law, which governs Culverhouse's claims under the internal affairs doctrine, *see* Section II.A n. 4, *supra*, recognizes that such retroactive attacks on business decisions place an "impossible" burden on the courts and "cripple" the ability of corporate officers to take business risks. *In re Citigroup Inc. Shareholder Derivative Litigation*, 964 A.2d 106, 125-26 (Del. Ch. 2009). Accordingly, claims against corporate officers for their business decisions must satisfy stringent pleading requirements. The Complaint does not meet these pleading requirements, and thus fails to state a claim.

### A.   Culverhouse Cannot State a Claim Against Paulson Advisers Absent Plausible Allegations of Gross Negligence, Bad Faith, or Willful Misconduct.

The business judgment rule "is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Citigroup*, 964 A.2d at 124 (quoting *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)). The general partners of a limited partnership are entitled to the protections of the business judgment rule, including a presumption that they acted "in the best interests of the partnership and the limited partners." *Zoren v. Genesis Energy, L.P.*, 836 A.2d 521, 528 (Del. Ch. 2003) (quoting *In re Boston Celtics Ltd. P'ship S'holders Litig.*, No. C.A. 16511, 1999 WL 641902, at *4 (Del. Ch. Aug. 6 1999)). These protections are "designed to allow corporate managers and directors to pursue risky transactions without the specter of being held personally liable if those decisions turn out poorly." *In re Citigroup*, 964 A.2d at 124. Culverhouse has the burden of pleading sufficient facts to overcome this presumption in his Complaint. *See id.*; *Zoren*, 836 A.2d at 528.

Culverhouse's claims are clearly subject to the business judgment rule. Claims for failure to monitor a business risk, to obtain adequate and proper information, to be fully informed regarding a risk, or to pursue "red flags" allegedly putting one on notice of problems with an investment, are nothing more than "dress[ed] up" attempts to hold the corporate decision makers "personally liable for making (or allowing to be made) business decisions that, in hindsight, turned out poorly[.]" *In re Citigroup*, 964 A.2d at 123-24. Such claims "risk[] undermining the well settled policy of Delaware law by inviting Courts to perform a hindsight evaluation of the reasonableness or prudence of directors' business decisions." *Id.* at 126. Claims that a corporate decision maker "did not make a prudent judgment about the possibility of future success" are "precisely the kind of argument precluded by the business judgment rule." *In re Lear Corp. Shareholder Litigation*, 967 A.2d 640, 651 (Del. Ch. 2008).

To overcome the presumption of non-liability attaching to Paulson Advisers' decisions under the business judgment rule, Culverhouse must plead either gross negligence or bad faith. *In re Citigroup*, 964 A.2d at 124-25 (quoting *Aronson*, 473 A.2d at 812). The burden of pleading gross negligence is "extremely stringent," requiring "reckless indifference to or a deliberate disregard of the whole body of stockholders or actions which are without the bounds of reason," or a decision "so grossly off-the-mark as to amount to 'reckless indifference' or a 'gross abuse of discretion.'" *In re Lear*, 967 A.2d at 652 (quoting *Tomczak v. Morton Thiokol, Inc.*, Civ. A. No. 7861, 1990 WL 42607, at *12 (Del. Ch. Apr. 5, 1990); *Solash v. Telex Corp.*, 1988 WL 3587, at *9 (Del. Ch. Jan. 19, 1988)). The burden to plead bad faith is "even higher." *In re Citigroup*, 964 A.2d at 125. It requires "alleging with particularity that a director ***knowingly*** violated a fiduciary duty or failed to act in violation of a ***known*** duty to act, demonstrating a ***conscious*** disregard for her duties." *Id*. (emphasis in original).

In addition to the business judgment rule, the Investment Fund has adopted an exculpatory provision in its Limited Partnership Agreement that exculpates Paulson Advisers from personal liability for all claims by the Investment Fund or its limited partners, "except for acts or omissions constituting gross negligence or willful misconduct." (*See* Complaint, Exh. A, §2.2(b)). This provision is authorized by Sections 17-1101(d) and (f) of the Delaware Revised Uniform Limited Partnership Act, 6 Del. C. § 17-1101(d), (f), which permit a limited partnership to "restrict[]" or "eliminate[]" a partner's duties at law or in equity, and to "limit[]" or "eliminat[e]" any and all "liabilities for breach of contract and breach of duties (including fiduciary duties)," other than bad faith violation of the implied covenant of good faith and fair dealing. Paulson Advisers' exculpatory clause is enforceable. *See Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 170 (Del. 2002); *Brickell Partners v. Wise*, 794 A.2d 1, 3-4 (Del. Ch. 2001). Gross negligence in this context has essentially the same "stringent meaning" as under the business judgment rule: an act "which involves a devil-may-care attitude or indifference to duty amounting to recklessness." *Gelfman v. Weeden Investors, L.P.*, 859 A.2d 89, 114 (Del. Ch. 2004) (citation omitted).

**B.**     **Culverhouse's Claims Fail to Meet His Burden of Pleading Gross Negligence, Bad Faith, or Willful Misconduct.**

The Complaint does not meet Culverhouse's pleading burden. It contains no allegations of bad faith or willful misconduct at all. (*See* Complaint, ¶¶ 67-82). As for gross negligence, the Complaint contains a number of conclusory assertions that Paulson Advisers acted "recklessly"

or with "reckless indifference," but a paucity of facts from which this Court could draw any reasonable inference that Paulson Advisers is actually liable for gross negligence.

Culverhouse asserts the same four theories in both Counts I and II of the Complaint: Paulson Advisers was grossly negligent and breached its fiduciary duties by (a) speculating that Sino-Forest would be a short-term investment and failing to conduct due diligence before purchasing its stock, (b) investing even more in Sino-Forest without proper monitoring or ongoing due diligence after the rumored acquisition of Sino-Forest never materialized, (c) failing to apply the "considerable resources at their disposal" to conduct due diligence and to identify the "red flags" that others such as Muddy Waters identified, and (d) putting their own interests in generating Management Fees and Incentive Allocations ahead of properly investigating the safety of the asset.[7] (Complaint ¶¶ 70, 75). A review of the Complaint fails to turn up even a plausible, much less a particularized, set of facts permitting a reasonable inference that any of these alleged acts constitute gross negligence or are otherwise facially plausible.

The first three theories are all variations on the same theme -- that Paulson Advisers did not perform adequate due diligence of Sino-Forest. Almost all of the allegations of the Complaint regarding the supposed inadequacy of Paulson Advisers' due diligence are conclusory, simply asserting that Paulson Advisers was not sufficiently diligent and making

---

[7] The fourth theory, attempting to assert a duty of loyalty claim for collecting Management Fees and Incentive Allocations, fails the "common sense" plausibility standard under *Twombly* and *Iqbal*, for the reasons discussed below. It is also legally insufficient, as it makes "no sense at all" to charge that a fiduciary's receipt of fees would provide a motive to "behave[ ] recklessly[.]" *Puskala v. Koss Corp.*, 799 F. Supp.2d 941, 954 (E.D. Wis. 2011) (rejecting theory that auditor's receipt of fees could establish motive to overlook accounting fraud). To the contrary, substantial annual professional fees provide a motive to act with great care "to ensure that the stream of fees continued." *Id.* Where a fiduciary's "greatest asset is its reputation for honesty, followed closely by its reputation for careful work," the collection of a few years' fees "could not approach the losses" the fiduciary would suffer from the loss of its reputation. *DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir. 1990) (rejecting theory that the collection of fees constitutes a rational motive for an accountant to cover up a fraud). *See also Jones v. Harris Associates L.P.*, 130 S. Ct. 1418, 1426 (2010) (quoting *Gartenberg v. Merrill Lynch Asset Management, Inc.*, 694 F.2d 923, 928 (2d Cir. 1982)) (holding that the collection of fees does not constitute a breach of fiduciary duty for purposes of Section 36(b) of the Investment Company Act of 1940 unless the fee is "so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining"); *In re Merkin*, No. 08 Civ. 10922(DAB), ___ F. Supp.2d ____, 2011 WL 4435873, at *9 n. 8 (S.D.N.Y. Sept. 23, 2011) (holding that collection of annual management fees amounting to "hundreds of millions of dollars" is "not unreasonable" and does not establish fraudulent motive).

frequent use of the modifiers "recklessly," "reckless indifference," and "grossly negligent." (*See* Complaint ¶¶ 2-3, 8, 40-43, 45, 49-50, 70, 75). The Complaint does not describe what due diligence Paulson Advisers performed or why it could not rely upon Sino-Forest's publicly filed Annual Reports and audited annual financial statements approved by Ernst & Young, filed annually with the Ontario Securities Commission, copies of which are attached hereto as Exhibit 5.[8] The Complaint also does not state what additional due diligence Paulson Advisers should have performed of this publicly traded security, how such due diligence would have impacted its evaluation of Sino-Forest, or why the decision not to perform such additional due diligence was recklessly indifferent or outside the bounds of reason.

Under the efficient market theory, in an "open and developed" securities market, the price of a company's stock is determined by the available material information regarding the company and its business, and all available information is efficiently digested and translated into "the processed form of a market price." *FindWhat Investor Group v. FindWhat.com*, 658 F.3d 1282, 1310 (11th Cir. 2011) (quoting *Basic, Inc. v. Levinson,* 485 U.S. 224, 241-44 (1988)). The Complaint does not contain a single allegation as to why it was recklessly indifferent or beyond reason for Paulson Advisers to rely upon the efficient market to yield an appropriate market price for Sino-Forest's stock based upon audited public disclosures and the reports of Wall Street analysts. If there was any misconduct, intentionally or otherwise, it was by Sino-Forest, not by the defendants. Indeed, the commencement of "a number of class-action lawsuits" against Sino-Forest "seeking billions of dollars in damages" evidences that Paulson Advisers was hardly alone in being caught unaware by the negative developments at Sino-Forest. (*See* Complaint ¶ 35). Culverhouse cannot plausibly suggest that every investor in Sino-Forest was grossly negligent,

---

[8] Excerpts from Sino-Forest's Annual Reports and Audited Financial Statements for 2006 to 2009 have been attached as Exhibit 5. The balance of these documents can be accessed online through Canada's System for Electronic Document Analysis and Retrieval (SEDAR), available online at <www.sedar.com>. This Court may take judicial notice of these publicly filed reports and audited financial statements, because their existence and contents can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201. Such documents suffice for judicial notice. *See Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp.2d 410, 421 n. 7 (S.D.N.Y. 2009) (taking judicial notice under Fed. R. Evid. 201 of public filings verifiable through the Securities and Exchange Commission's EDGAR database); *Benhabib v. Hughes Electronics Corp.*, No. CV 04-0095 CAS (VBKx), 2007 WL 4144940, at *3 n. 2 (C.D. Cal. Mar. 30, 2007) (same); *Coleman & Co. Securities, Inc. v. Giaquinto Family Trust*, 236 F. Supp.2d 288, 308-09 (S.D.N.Y. 2002) (same).

where the Complaint itself acknowledges that China's timber industry features "complex" and "opaque" business structures that hampered even the Independent Committee's efforts. (*See id*. ¶¶ 8, 29-30). If anything, these allegations show that any purported inadequacies in due diligence were simply a result of the complexity of the investment.

The remainder of Culverhouse's allegations as to Paulson Advisers' fiduciary duties are fraught with legal conclusions and factual inaccuracies, and assert only what Culverhouse believes Paulson Advisers' duties *should* be. (*See id*. ¶¶ 19-21, 39, 46-48, 68-69, 74). The only arguably factual allegations relating to due diligence are that: (i) after the Investment Fund had already invested in Sino-Forest, Muddy Waters issued a research report that claimed there were irregularities with and overstatements of Sino-Forest's timber holdings, and subsequent reports by Augment Partners and the Independent Committee could not disprove all of Muddy Waters's allegations; and (ii) Paulson Advisers' trading desk had purportedly been receiving requests to borrow stock to short-sell the Sino-Forest stock. (*Id*. ¶¶ 4, 6, 27-30, 43, 51). The assertion that third parties uncovered irregularities at Sino-Forest in 2011, however, does not give rise to an inference that Paulson Advisers' earlier due diligence or monitoring would have uncovered the same irregularities when the entirety of the market did not. Indeed, the existence of disagreements between Muddy Waters and Augment Partners (*see id*. ¶ 29), and the inability of the Independent Committee to reach conclusions on several issues (*see id*. ¶ 30), indicates the opposite. Requests to borrow stock to short-sell also cannot plausibly be construed as a warning sign that Sino-Forest's timber assets were overstated or that it was engaged in other questionable practices, or else every short-sell would be implausibly transformed into a "red flag" of corporate impropriety. These allegations simply do not support an inference that Paulson Advisers was acting outside the bounds of reason.

As for the theory that Paulson Advisers put their own interest in generating large Management Fees and Incentive Allocations ahead of properly investigating the safety of Sino-Forest, it is utterly irrational. The Management Fees and Incentive Allocations are based on the partnership's net asset value and yearly aggregate net gains. (*Id*. ¶ 18, Exh. A, §§ 1.10(b), 3.3(a)). If an investment loses money, the net asset value and aggregate net gains both decline, reducing the Management Fees and Incentive Allocations. (*See id*.). The Management Fees and Incentive Allocations thus align Paulson Advisers' self-interest with the limited partners' interest in safe and profitable investments. The Complaint has failed to allege any plausible set of facts

under which Paulson Advisers could have benefited in its fee collections by losing money on Sino-Forest. The theory simply lacks "common sense." *Iqbal*, 129 S. Ct. at 1949-50. It is also legally insufficient to state a claim for breach of the fiduciary duty of loyalty, in light of the widespread judicial recognition that collection of annual professional fees does not foster disloyalty, but rather has the reverse effect of reinforcing loyalty and discouraging recklessness by a fiduciary. *See* note 7, *supra*; *DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir. 1990); *Puskala v. Koss Corp.*, 799 F. Supp.2d 941, 954 (E.D. Wis. 2011).

Culverhouse's unjust enrichment claim is similarly nonsensical. As explained above, losing money on Sino-Forest could not possibly have "conferred a benefit" on Paulson Advisers in the form of Management Fees or Incentive Allocations, because the loss negatively impacts both the net asset value and net gains used to calculate those fees. (Complaint ¶ 79). In any event, the Complaint alleges the existence of a contract between the parties -- the Limited Partnership Agreement for the Investment Fund -- governing the collection of Management Fees and Incentive Allocations. (*Id.* ¶¶ 15, 18, Exh. A, §§ 1.10(b), 3.3(a)). Under controlling New York law, a claim for unjust enrichment is "not viable" and must be dismissed where the plaintiff alleges an "express contract[]" governing the same subject matter. *One Step Up, Ltd. v. Webster Business Credit Corp.*, 87 A.D.3d 1, 14, 925 N.Y.S.2d 61, 70 (N.Y. App. Div. 1st Dept. 2011). *See also Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co.*, 70 N.Y.2d 382, 388 (N.Y. 1987).[9]

## CONCLUSION

Every investment has risks, and an investor of Culverhouse's sophistication was certainly aware of, and knowingly accepted, the risks when he invested in the Feeder Fund. Indeed, one of the very risk factors contained in the Investment Fund's Confidential Private Offering Memorandum states that the Investment Fund "may trade in non-U.S. securities," which "require consideration of certain risks not typically associated with trading in United States securities or

---

[9] Under Florida's *lex loci contractus* rule, an unjust enrichment claim is governed by the law of the state in which the (quasi-) contract was executed. *See David v. American Suzuki Motor Corp.*, 629 F. Supp.2d 1309, 1316-17 (S.D. Fla. 2009). Here, that would be New York, where the Investment Fund is located. (Complaint, Exh. A). The result would be the same, however, under Florida or Delaware law, as both require dismissal of an unjust enrichment claim where an express contract is alleged. *See Equity Lifestyle Properties, Inc. v. Florida Mowing And Landscape Service, Inc.*, 556 F.3d 1232, 1240 (11th Cir. 2009) (citing *Williams v. Bear Stearns & Co.,* 725 So.2d 397, 400 (Fla. 5th DCA 1998)); *Bakerman v. Sidney Frank Importing Co.,* No. Civ. A. 1844-N, 2006 WL 3927242, at *18 (Del. Ch. Oct. 16, 2006).

property," including "less publicly available information about certain non-U.S. companies than would be the case for comparable companies in the United States," and "accounting, auditing and financial reporting standards and requirements" that may not be "comparable to or as uniform as those of U.S. companies." (Complaint, Exh. B, p. 18). The fact that Culverhouse is disappointed at the outcome of his investment, in light of these known risks, cannot supply a basis to sue Paulson Advisers, lest every investor who suffers a loss be encouraged to sue every investment manager and to seek a remedy through judicial hindsight. Culverhouse has neither standing nor legal grounds to assert his claims. For these reasons, Paulson Advisers respectfully requests that this Court dismiss the Complaint with prejudice, and grant such other and further relief as the Court finds necessary or appropriate.

Dated: <u>April 6, 2012</u>                              Respectfully Submitted,


                                        /s/ Timothy A. Kolaya
                                        HILARIE BASS
                                        Florida Bar No. 334243
                                        E-Mail: bassh@gtlaw.com
                                        TIMOTHY A. KOLAYA
                                        Florida Bar No. 056140
                                        E-Mail: kolayat@gtlaw.com
                                        **GREENBERG TRAURIG, P.A.**
                                        333 Avenue of the Americas
                                        (333 SE 2nd Avenue)
                                        Suite 4400
                                        Miami, Florida 33131
                                        Telephone: (305) 579-0500
                                        Facsimile: (305) 579-0717

                                        and

                                        RICHARD A. EDLIN (*Pro Hac Vice* Pending)
                                        E-Mail: edlinr@gtlaw.com
                                        GREENBERG TRAURIG, L.L.P
                                        MetLife Building
                                        200 Park Avenue
                                        New York, NY 10166
                                        Telephone: (212) 801-9200
                                        Facsimile: (212) 801-6400

                                        *Attorneys for Paulson & Co. Inc.*
                                        *and Paulson Advisers LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 6th day of April, 2012, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Timothy A. Kolaya

TIMOTHY A. KOLAYA

**SERVICE LIST**

Harvey W. Gurland, Jr.
hwgurland@duanemorris.com
Felice K. Schonfeld
fkschonfeld@duanemorris.com
DUANE MORRIS LLP
200 South Biscayne Boulevard
Suite 3400
Miami, Florida 33131
Telephone: (305) 960-2214
Facsimile: (305) 397-1874

*Attorneys for Plaintiff*
*Hugh F. Culverhouse*

Lawrence A. Kellogg
lak@lkllaw.com
Jason Kellogg
jk@lkllaw.com
LEVINE KELLOGG LEHMAN SCHNEIDER
& GROSSMAN LLP
201 South Biscayne Boulevard
34th Floor
Miami, Florida 33131
Telephone: (305) 403-8788
Facsimile: (305) 403-8789

*Attorneys for Plaintiff*
*Hugh F. Culverhouse*